ABRAHAM REICH, MATTHEW A. REICH AND SAMUEL REICH, TRADING UNDER THE FIRM NAME AND STYLE OF A. REICH & SONS, PLAINTIFFS-APPELLANTS, v. J. EMMET McGILL, TRADING UNDER THE FIRM NAME AND STYLE OF McGILL'S INTERSTATE EXPRESS, DEFENDANT-RESPONDENT.

Submitted October 29, 1937—Decided January 26, 1938.

For the appellants, *Armstrong & Mullen* (*Arthur C. Mullen*, of counsel).

For the respondent, *Isidore Hornstein.*

The opinion of the court was delivered by

PERSKIE, J. The determinative question in this cause is whether the carrier's liability, under the proofs exhibited, is limited to the value placed upon the shipments as expressly stated in the receipts issued therefor.

Appellants—plaintiffs below—as shippers, sued respondent —defendant below—as a common carrier, to recover the value of ten bales of silk which defendant, contrary to his alleged undertaking with plaintiffs, failed to transport to three of plaintiffs' consignees. Plaintiffs' complaint consists of three counts. Generally stated, plaintiffs primarily sought to recover (under the first count) the *actual* value of the ten

bales of silk, namely, $2,000; and if not entitled to the recovery sought under the first count, claimed the right of recovery (under the second count) on a basis of the weight of the shipments, which amount we are told would equal the sum of $665; and if not entitled to recovery on either the first or the second count, plaintiffs claimed the right of recovery (under the third count) to the conceded amount of $50 for each shipment, or a total of $150. Defendant generally denied liability; he especially denied any liability beyond his conceded liability under the third count of plaintiffs' complaint.

Counsel for the respective parties stipulated the facts and submitted the cause for decision by the trial judge, without a jury.

From the record and stipulation thus submitted, we learn that on January 30th, 1934, defendant, as a common carrier, received from a warehouse in Hoboken, New Jersey, ten bales of silk, in lots of two, three and five bales, to be transported to three of plaintiffs' consignees, in Paterson, New Jersey. At the time defendant received the goods, Mr. Bryant, a shipping clerk of the United States Testing Company, Incorporated, and admittedly not the agent of the defendant, filled out defendant's form of receipts (numbers 11604, 11605 and 11606) covering the shipments in issue. Each of the receipts so filled out contains the following printed statement: "Value herein declared by shipper to be  *  *  *." On the blank space of the quoted statement Bryant wrote in "$50." And we are told that each receipt also contains, among the "terms and conditions" thereof, the following provision:

"1. In consideration of the rate charged for carrying said property, which is dependent upon the value thereof and is based upon an agreed valuation of not exceeding fifty dollars for any shipment of 100 pounds or less, and not exceeding fifty cents per. pound, actual weight, for any shipment in excess of 100 pounds, unless a greater value is declared at the time of shipment, the shipper agrees that the Company shall not be liable in any event for more than fifty dollars for any shipment unless a greater value is stated herein. Unless a greater value is declared and stated herein, the shipper agrees

that the value of the shipment is as last above set out and that the liability of the Company shall in no event exceed such value."

We learn further from the stipulation that while the total weight of the ten bales was one thousand three hundred and thirty pounds, no weight was declared in any of the receipts covering the shipments for which recovery was sought; that plaintiffs did not pay any charge or premium for coverage on a weight basis in excess of the stated value of $50 for each shipment; and that defendant did not deliver the bales of silk to plaintiffs' consignees because while en route to Paterson to make delivery, defendant's truck was held up and plaintiffs' merchandise was robbed therefrom. Under these circumstances, and in the words of the stipulation, the issue submitted was "whether or not the receipts [covering the shipments] * * * limit the liability of the defendant as a common carrier" to the value of $50 as expressly declared or stated in each receipt.

The trial judge found that "Bryant was plaintiffs' agent, and that by reason thereof, there is an unambiguous contract between the parties whereby the defendant's liability for loss of the three shipments is expressly limited to the declared valuation of $50 each." Accordingly, he rendered a verdict for the plaintiffs in the sum of $150 "for the three shipments enumerated in the first count of the complaint" and a verdict of "no cause for action" for defendant on the second count of the complaint. In the interest of accuracy, we merely point out that what the court actually did was to render a verdict for the plaintiffs for the sum which defendant conceded was due to plaintiffs; this, in fact, was covered under plaintiffs' third count. From the judgment entered upon the verdicts as rendered by the trial judge, plaintiffs appeal.

We are entirely satisfied that the judgment in favor of defendant on the second count of the complaint is free from error. While it is true that the weight of the bales, and the rate of transportation based upon that weight was stipulated, yet, it is also true that no weight was declared or stated in

the receipts, and that no coverage rate was exacted or paid upon any such basis.

We are, however, of the opinion that the trial judge did fall into reversible error in concluding, upon the proofs exhibited that Bryant was plaintiffs' agent and that, therefore, the receipts which he issued effectively limited defendant's liability thereunder to $50 for each shipment, or $150 in all.

When, as here, the shipment is intrastate (as to interstate shipments see *Spada* v. *Pennsylvania Railroad Co.,* 86 *N. J. L.* 187; 92 *Atl. Rep.* 379), the law is well settled that a common carrier is subject to the common law of full liability for the actual value of the goods shipped but not delivered in the absence of a special agreement limiting his liability. *Hill* v. *Adams Express Co.,* 82 *N. J. L.* 373; 81 *Atl. Rep.* 859. Agreements for limiting liability are in derogation of common right and, therefore, are to be construed most strictly against the carrier. *Russell* v. *Erie Railroad Co.,* 70 *N. J. L.* 808, 811, 812; 59 *Atl. Rep.* 150. The burden of showing such an agreement rests upon the carrier. *Hill* v. *Adams Express Co., supra.* We are satisfied that the carrier has not borne the burden thus placed upon him. Nowhere in the stipulation is it made to appear that Bryant was plaintiffs' agent, with authority to bind them to the terms of the contract here sought to be enforced against them. Indeed, for aught that appears, there is nothing to indicate that Bryant was in anywise or in any manner employed by or connected with plaintiffs. Even were we to assume, and the stipulated facts warrant no such assumption, that the company for which Bryant worked as shipping clerk was the owner of the warehouse from which defendant took the goods, still that would be of no avail to defendant. For, here again, there is no proof that either Bryant or the company for which he worked had the authority to bind the plaintiffs. *Cf. Stickel* v. *United Express Co.,* 85 *N. J. L.* 285; 89 *Atl. Rep.* 23. Nor is there any claim made that plaintiffs ratified Bryant's action.

We are firmly of the opinion there is nothing in the facts as stipulated warranting the finding that Bryant was plain-

tiffs' agent or that he otherwise had the authority to bind plaintiffs.

Judgment is reversed, a *venire de novo* awarded; costs to abide the event.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, WALKER, JJ.   15.